Welcome to the Court of Appeals for the Third Circuit, and we've got one case for today. It is Williams v. Attorney General No. 24-1091, and we'll hear from Appellate's counsel first. Good afternoon. Good afternoon. Are you reserving any time? I'd like to reserve three minutes, if I could, Your Honor. That'll be granted. Thank you very much. Good afternoon. Kevin Soder from the Department of Justice for the Government. Plaintiff Edward Williams challenges the constitutionality of the federal felon in possession law as applied to him. Since the district court ruled on that claim, there have been some major developments in this area. First, governing precedent in this circuit now requires an individualized assessment into a particular felon's prospective dangerousness. No such findings have been made in this case, and the district court's judgment therefore cannot stand. Maybe we dig right into it, because you have 15 minutes. You sent us a 28-J letter informing us that the government is willing to hold this appeal in abeyance if Mr. Williams will petition the general pursuant to 18 U.S.C. section 925C. Is that the case? Yes. I think we have consistently made clear to Mr. Williams' counsel that the government is willing to put its own appeal of the district court's judgment, which otherwise remains in full effect, into abeyance, pending an application under section 925C. I think the reason we find ourselves here today is that Mr. Williams' counsel has repeatedly said that he will not participate in that process. We remain willing to take sort of the same view that we've taken a few changes. Thank you. Can we dig in a little bit on 925C? I mean, this is something that's relatively new, fact not lost on your friend across the aisle. Does it matter that there's no real rule in place? Now, we understand, and thank you for sending along, we've seen the notice of proposed rule making. Does it matter that there's not more procedure in place? No. The statute is quite clear that the Attorney General has authority to grant relief under this statute to someone whom she finds to not pose a risk of dangerousness with firearms, prospectively. And indeed, she has granted such relief to 10 individuals, as we've noted in our briefs. And you can see that in the Federal Register, both through the interim final rule that took immediate effect back in March, through which the Attorney General withdrew the delegation of authority to ATF, and through the subsequent notice of the names of 10 individuals whom the Attorney General, in fact, granted that relief to. I'm interested in the Attorney General's position. Is this a required administrative, is there administrative exhaustion required under 925C, or is this something that's an optional type of thing? We do believe that it's required for the reasons set forth in our brief. I think this is sort of a, as a matter of sound judicial discretion. There are cases, for example, the Cicely case from the Ninth Circuit and a case from the Second Circuit addressing why, although Congress had not said, you must go through this process before bringing your claim before a court, it was nonetheless clear from the text and structure of the statute at issue that Congress intended for an administrative exhaustion requirement to exist. Now, of course, in this case, the District Court hasn't had the opportunity to assess the impact of Section 925C on this. We're happy to have this court rule as a matter of law that it's necessary to go through this process. But I think I also recognize that perhaps if Mr. Williams were clearly put to the choice of litigate these facts in District Court or litigate these facts under Section 925C, perhaps he would make a different choice. Let me ask one more question, then I won't hog this up, but what would you have us do? What exact relief are you looking for? So I think if you follow our supplemental brief, I think the first thing that the court should do is make clear that under intervening precedent, the District Court's decision cannot stand. The District Court was looking for sort of a historical analog to driving under the influence and then disarmament. That sounds like vacate. So that would be vacate. And then I think either remand to the District Court to address the impact of Section 925C in the first instance, in which case the District Court could address the arguments we've been talking about exhaustion, ripeness, etc. Or because those are legal issues that of course will affect other cases to the extent the court concludes that this is an appropriate case for addressing the legal question that Plaintiff's Counsel has raised of what do you do if someone refuses flat out to seek relief through this process, then the court could hold that a refusal to seek relief through this process defeats the claim without prejudice to being able to later assert that a failure to get relief through 925C in turn violates the person's constitutional rights. When you started, you said that the precedent that we have so far requires courts to inquire into the defendant's prospective dangerousness. And I want to focus on that word prospect. Where do you get that perspective concept? I think the Pizzolitti's case from this court is particularly clear that what you're looking at when you have someone who brings a declaratory judgment saying, I want relief from the you're looking at that person today and you're saying given everything we know about this person, not just the disqualifying offense, but the facts underlying disqualifying offense and post-conviction conduct. Put Pizzolitti's aside for a minute. Do you get the concept from any Supreme Court cases? From this court's en banc decision in range the second time around, I think, is where Pizzolitti's drew that understanding from. Yeah, let's say for the sake of argument, we're not buying that. That that dicta from Pizzolitti's is not binding and it's just a suggestion. Well, I do think the holding of Pizzolitti's only really makes sense if you take that piece of it that the court was saying we need to look at all of these intervening facts. That's why just knowing the statute of conviction wasn't enough for the court to affirm there. And of course, a panel of this court is bound by prior panel decisions. So for Mr. Williams, you would look at all of his post-conviction conduct from 2005 until today? Yes, I believe that's what this court- Does that create a problem under, sorry, Apprendi and Booker, because you have a judge fact-finding, I guess, under a preponderance of the evidence sort of standard, what the person's dangerousness is? I don't think so. Of course, this is a civil lawsuit that we're talking about. I think you can certainly distinguish the context of what you do in an as-applied prospective declaratory relief action like this one from what you would do when someone raises a defense to prosecution, which I assume is the context in which that would come up. There's been no indictment or anything here, right? No, this is entirely Mr. Williams filed a complaint coming to court like Mr. Range did and like Mr. Pizzolitti did. Do you have standing? So we have not contested his standing. I do think that the analysis that you would do of whether the court has jurisdiction to, in the first instance, look at the facts about dangerousness is different now that there is Section 925C. That really goes, I think, to the ripeness of the claim. When you have a situation where someone says, I want pre-enforcement relief from a law that applies out there, that person generally has to use the administrative mechanism that's available to them to seek relief from that law before coming to court. If someone were, for example, saying, I would like to engage in a parade on a particular route as First Amendment-protected activity, and there were a mechanism for that person to apply for a permit for that parade, but the person instead just jumped to court on the assumption that they wouldn't get the permit, that claim would be unrighteous. Would it matter if he had been indicted or convicted under G1? Assume a G1 indictment and conviction that doesn't say anything about dangerousness. It just says he was convicted back in 2005 of DUI, and that was a felony, and now he has a gun. So he is, again, in trouble under G1. And so you're asking courts now to go back over the last 20 years and evaluate, like flyspeck his life and evaluate whether he's a dangerous person. Again, any apprendee problem there? Again, I'm not sure. I think what this court has said in its precedents, which have included in the criminal context, is that you are looking at all of the facts that surround the possession at issue. So if you were talking about someone who 15 years after a conviction was walking around knowingly with a firearm in violation of the law, I think you could look at all of those facts, including I think it would be quite significant in the analysis that the person was knowingly violating the law, distinguishing them from someone who seeks declaratory judgment, as in this case, or from someone who goes through the Section 925C process. I think there is certainly a very real concern with applying this court's precedents in a way that is manageable for the district courts within this circuit. And that is a significant virtue of Section 925C, as you have the Department of Justice potentially obviating the need for litigation and going through these facts. So we don't know anything more about Mr. Williams' life or his post-conviction conduct. But let's assume that it's clean, pure as the driven snow. Does the fact that he has a 20-year-old DUI make him dangerous? I think it very well might. That's a question for a fact finder in the first instance. That has not, again, been made here. I think the reason that we've suggested a remand to district court so that these facts could be found either by the district court or if you accept our argument about sort of exhaustion and ripeness through the 925C process is that you could account for everything, not just the disqualifying conviction, not just the handful of facts you have about the offense conduct underlying that. And of course, I think if you look to this court's decision in Holloway, which is no longer good law in terms of what the Second Amendment analysis, but it goes into quite a bit of detail about the reasons why you might be concerned with putting firearms into the hands of people who are recidivist drunk drivers under the same statute. So talking about pizzolitas, it could be read as first considering whether or not in sort of a Williams, not Williams here, but Williams in the Sixth Circuit sense of first determining whether or not it is the type of crime that reflects a special danger of misuse or physical danger to others. And then only then reaching the question of whether or not prospectively in which you consider post-conviction conduct. But in the first instance, you just sort of look at the conviction itself. And so if that were the framework, whose burden is it if in fact it is a conviction that reflects a special danger of misuse. So now it's assume it is as applied constitutional. But of course, since 922 G in most instances is de facto permanent, the person can challenge it. And is it that person's burden or is it the government's burden to show that that person remains a danger? There was a lot in there. I want to make sure to address all of your points. First, as to how section 922 G1 applies in light of section 925 C, as we've explained, it no longer should be thought of as a permanent prohibition because someone can seek relief from it at a particular understanding that here you have said that he could have an expedited application in advance of the rule. But I'm just talking about it generally. So generally, I think what the Sixth Circuit laid set forth in Williams, I think was a strong reason for recognizing that the way to understand history is that the government can make the categorical determination at the front end. Felony conviction makes you kind of out from being able to have your right to bear arms. This court's decisions in quails and more, for example, hold that while someone is serving the terms of their criminal sentence, they may be disarmed. And I didn't see anything in those cases that turned on the nature of the underlying felony. I think it's quite clear that while you're serving your criminal sentence, those cases hold. And then it's afterwards that you get into this analysis. Now, what I think this court said in Pizzolitti's was a correct understanding of what range two was saying when the court said in Pizzolitti's quote, courts adjudicating as applied challenges to section 922 G1 must consider conducts entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction to evaluate whether he meets the threshold for continued disarmament. As range to illustrated consideration of intervening conduct plays a crucial role in determining whether application of section 922 G1 is consistent with the second amendment. And so I just don't see a way to read those passages and to read range to itself and not come away with the conclusion that even as to the category of offense that Mr. Range was in, you do have to look at the intervening conduct. Well, sure. Maybe after first determining that the gambling in question was in fact a crime that is meritorious of a presumption that someone is a special danger of misuse. In other words, there, it could be one way. It could be the other, depending on the fact that he had security. Maybe it's just a poker game. I don't think so. Both because this court was describing its own holding in range to, and because the conduct that the court was describing was primarily focused on the post-conviction conduct that resulted in a non-disqualifying for purposes of G1 misdemeanor offense. That's where the SWAT team and the security all came in. The court was not as concerned, in fact, with the facts underlying the disqualifying conviction. If I could just sort of step back and just make clear, I think plaintiff's supplemental brief in describing how this court's analysis is supposed to go is just not reconcilable with what this court said in range two and pizzolittis. The plaintiff says that there's a line you draw where all you're looking for is whether the initial offense was violent. And if it's not violent, then the person has a second amendment right. That is quite clearly not what this court said in pizzolittis. If you read the rest of the sentence that's quoted in the plaintiff's brief, it focuses on whether there's conduct that endangers the physical safety of others, which, of course, is an accurate description of the DUI offense in this case. And it says, quote, both history and common sense reflect that this dangerousness includes not only direct involvement in physical violence. How does our very recent decision in Harris affect this case, if at all? I think primarily it underscores that under this court's precedence, the focus is on an individualized factual inquiry into the whole of the person and all of the conduct that you're looking at surrounding that. Of course, I think it is also helpful to see that there are these founding-era laws that reflect that if you go back and try to take someone in Mr. Williams's spot back in 2005 and take him back to the founding, you would see a number of restrictions on that person's ability to keep in their arms. But I think the court's analysis is sort of looking at the history on a provision-by-provision basis. So here you're really focused on the treatment of felonies. Those historical regulations, and same thing in Rahimi, too, started with the person's misuse of a firearm. He was dangerous because of the way he used a firearm, right? So is there any difference here where the purported dangerousness of Mr. Williams's conduct wasn't firearm-related? It was a DUI? No, because I think the premise of that question is not how I understand the regulations that were discussed in Rahimi and that have been addressed in this court's cases. The regulations are about, for example, the surety regime that was at issue in Rahimi and was discussed there, deals with people who you can make a prospective determination this person poses a risk of danger in the future, therefore we're going to make them post-surety and give up the right to bear arms. Is repeated driving of a car while drunk reflective of a danger of, I guess, similar to a firearm of using a dangerous instrument irresponsibly? Yes, I certainly think that is a key piece of the analysis that a court making factual findings would go through, and it would determine what's the nature of the conduct that was underlying these offenses, and crucially, I think, making factual findings recognizing has something changed in the passage of time. And given that that's your position and that a prospective danger has to be present, what is the temporal, I guess, duration that one can presume dangerousness from that conviction? I don't think there's going to be a kind of right-line rule, I think, with this court's precedent set forth and what 925C imagines is a person-specific fact-intensive analysis. And as you'll see from the notice of proposed rulemaking that Chief Judge Chigars mentioned, there are some presumptions built into that rule that the Attorney General anticipates would inform her exercise of that discretion. What about, it seems that Williams engaged in, Williams here, not Williams, Sixth Circuit Williams, engaged in knowing criminal conduct and continuing possession of firearms, despite the fact that he knew he was banned by 922G1. Should we consider that? Is that something that 925C, under the new rule, although I guess you're proposing he be evaluated not pursuant to the proposed rule, is that something solely upon remand that should be considered? Should it be considered at all? I think it would certainly be appropriate to consider that by the fact finder who's making this dangerousness determination, which the reasons we've explained should be the Department of Justice. And that determination, of course, could be reviewed in district court under 925C itself. We've been using the word dangerous, but the principle from Rahimi actually was that when an individual poses a clear threat of physical violence to another, then he can be disarmed. And of course, that sort of ties back to the PFA, where there was a threat of physical violence against the victim. Is there a difference between dangerousness and physical violence? Would this dangerous sort of veer more towards irresponsibility and physical violence being something different? I think this court's decision since Rahimi have made clear that its precedents are consistent with that as far as calling dangerousness the touchstone now, as Judge Bevis' dissent back in Fulajtar had sort of seen coming. And that that is an aspect in the context of the law at issue in Rahimi, you're talking about the clear threat of physical danger in the context of the felon in possession law. You are talking about a risk with firearms going forward, and you have a similar kind of risk analysis in the G3 context that was addressed in Paris. Rahimi talked about special danger of misuse to Judge Porter's question, is that, does that have to equate to at least some sort of physical danger? I think it's all, at least as I understand this court's precedents, all sort of about does this person pose a risk if you allow them to be armed? Pose a risk of physical danger. I think it could be to themselves or others. Of danger or violence? I would say danger with firearms. Can I get back to 925? Oh, sorry, go ahead. Well, so how does someone's DUI, 20-year-old DUI, make him a threat of, what did you just say, danger with firearms? So I think certainly, as I think Judge Chung's question asked, there is an overlap between are you sort of doing something that is quite dangerous with a piece of lethal machinery, which a car can be and a firearm certainly also can be. But again, I don't think that your analysis is going kind of what this court has said. You're not looking at it as crime by crime. You're going to say this crime is necessarily always enough for at least certain crimes, like certainly the one that was at issue in Range. I think the crime here is probably a closer question on that than the one in Range or the one in Pitsilides. But we're not asking the court to make a categorical conclusion that a DUI of this kind can necessarily still be applied to disarm someone 20 years later. This is all jurisprudentially a fairly new area. Is it the department's position that we're going in the right direction, or should we be going in the direction of the Fifth Circuit and say Kimball? So I'm sorry, I'm not familiar with that specific case of the Fifth Circuit. All right, OK, never mind then. That's fine. That's fine. I did a couple of more questions on 925C. What in that section tells us that it is required to be, it's an administrative procedure, sure, but I mean, not every administrative procedure is required. What in this makes it required? I mean, it says it may, a person may make application, but is there anything that sort of creates a more solid requirement? Yes, I think when you look at what the case is talking about, sort of an exhaustion requirement that's imposed as a matter of sound judicial discretion, you will see that a number of considerations are taken into account. One is, is it clear that Congress was making an agency the primary decision maker? Here, I think it's quite clear that Congress wanted the Department of Justice to be the primary decision maker on prospective dangerousness. And so by putting that process back into place, that's gotten things back where Congress wanted it to be in the first place. So is this statute jurisdictional then? So I don't know how, I would say, sorry, I'm not sure how exhaustion requirements have been described. I think there is a jurisdictional component to this issue with particularly, as far as you have a pre-enforcement challenge where you don't yet know whether the person will get released. If this exists, if we buy your argument, then none of us should be, then this thing, we should be dismissing, right? I think it would certainly be appropriate for the court to recognize this plaintiff has an available process to him. His case should be, his Second Amendment claim doesn't work because he challenged the lack of an opportunity. That opportunity now exists. So that claim is moot. To the extent he's here saying, I challenge the adequacy of the opportunity that's been made available to me. So even declaratory relief wouldn't be available for a person in his position? At this point, no, because he can go through this process without any prejudice to his ability to later assert that the process he received was somehow incompatible with the Second Amendment. I think it's worth stepping back and keeping in mind one of the reasons why courts frequently talk about, as a matter of discretion, having someone go through a process like this is, in addition to getting a very helpful record, you also may obviate the need for any litigation at all. So you started a sentence saying, to the extent he is saying the process is inadequate under 925C, what was the end of that sentence? Basically, he has to actually try the process before he can say it's inadequate. Yes. I think the court has two options for resolving that. It could say it's clear that this process is adequate. We're talking about a challenge to the scheme as a whole, and the Department of Justice has put back in place the very type of mechanism that this court had said was constitutionally required in its Range decision and its Vitsalides decision. And so you could say the claim just fails on the merits, given what you know about the  Or you could say, if you think you need to let it play out, that it's premature to decide whether the scheme is adequate as applied to this particular person. Does the Supreme Court's decision in Bean support your positions? Yes. And thank you for mentioning that, because I think Bean shows a lot about what the text and structure of section 925C actually were intended to be. Bean said, among other things, quote, whether an applicant is likely to act in a manner dangerous to public safety presupposes an inquiry into that applicant's background. A function best performed by the executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation. And so having that exact kind of investigation happening in the Department of Justice rather than in the district courts through the circuit would make ample sense. And of course, this court has its unmarked decision before that in Pontarelli, which makes a very similar point about the relative institutional capacities of courts and the executive branch. All right. Thank you. We'll hear you on rebuttal. And we'll hear from your friend. Also, we got some empty seats over here if you guys want to fill in. Help yourself. Go ahead. Come up more toward the front. Don't be shy. We got two seats left, you guys. Like high school all over again. Okay. All right, my friend, go ahead. Good afternoon. May it please the court. I'm Attorney Joshua Prince, and I represent the appellee, Mr. Williams, in this matter. I want to first thank this court on behalf of myself and my wife for scheduling it today. Given our medical appointments over the next two days, it is not lost on my wife or I that this is the only argument being held today. So please know our appreciation as well as to Attorney Sotter who made this available for us. Rolling this together. Well, thank you. Greatly appreciated. With that being said, I have spent an incalculable amount of time reviewing the concurring, dissenting opinions as well as the majority opinions, not just in this court, but throughout the United States, trying to figure out exactly what so many of the concurring opinions asked in this court, especially in range. Give us a rule that is grounded in the history and tradition that disposes of so many of the challenges currently before this court. And I believe that I have, thankfully, and in part, thanks to you, Judge Chung, and part of your footnote in range joining Roth, it helped spark in me the thought that we needed to take a step back. And I believe there are three categories that we can all agree that historically and traditionally were disarmed through different mechanisms, all temporarily, in some sense. The first, and this is analyzing under 922 G's prohibitions. The first are those who are not of the people. This would include those in 925 G5 who are illegal aliens, as well as 922 G7, those who have renounced their U.S. citizenship. Beyond that, we have our second category, those identified in Rahimi, where the individual after a hearing and a judicial, where they're provided due process and a judicial finding that they pose a danger to another are stripped temporarily of their right to keep and bear arms. This would apply in section 922 G2, which involves fugitives from justice. 922 G3, which involves unlawful users of or addicted to any controlled substance. 922 G4, adjudicated as a mental defective or involuntarily committed. 922 G6, discharged from the armed forces under dishonorable conditions. 922 G8, subject to a restraining order. Again, all under the guise of the Rahimi decision. The third category and last category, in which I believe brings us here today, are those who are convicts. Those who were convicted of a crime punishable by more than one year in jail under 922 G1. And what we can distill from that and the concurring opinions, especially of the judges of this court in range, is that individuals were only prohibited during their incarceration. Now, of course, that begs the question, well, what happens in today's world where we have probation and parole, ARD, Accelerated Rehabilitative Disposition, where there is no conviction? Those also all fall under convicts because where probation and parole come from is an agreement by the incarcerated convicted individual in agreeing to get out of jail subject to these terms. So it would likewise, under the how and why analysis, be constitutional to strip them while they're under probation and parole. So no problem with more? No, consistent with. The issue with ARD is that you don't have a conviction. But once again, you have an individual voluntarily entering into that process whereby they know if they enter into that process during the term of ARD, they are going to be disarmed. And that leaves it all within the control of the trial court judges who know these defendants to determine how long they should be incarcerated, if at all, as well as how long they should be subjected to any disarmament. Judge Chung, I know this goes a little bit aside of your footnote in range two, where you talk about the fact that you believe that the individual should be prohibited for the maximal period that they could have been punished by. And I know that is kind of Judge Roth's opinion as well. I have done as much analysis as I could. I have not found support for the contention that the founding fathers did not maximally punish individuals at the time of founding. I know Justice Barrett, of which Judge Roth cites two, had previously made that contention. But when you actually look at where she states that, there is no actual support. It's just a hypothesis. And I would put forth that when we're talking about a constitutional right, we can't just make assumptions that limit that right without actual proof of what we're arguing. So your limiting principle is just you can be disarmed for your third category. The disarmament duration is simply for the sentence. Yes, but there is still the Rahimi analysis. So if someone, either at the point of time that they would end their incarceration, probation, parole, ARD, is brought before a court, and there is a process provided that provides due process to them, and they are able, the government is able to establish before that this person is still a danger in possession of a firearm, they could disarm them temporarily. So if we're talking about dangerousness and threat of physical violence, we're essentially trying to transport those identified in Rahimi category into G1. Yes, Your Honor. Is there a problem with that? I believe so, because they are, in essence, distinct categories of which we disarm people. So one is, I think everyone here in the courtroom would agree, those being incarcerated, there is no dispute. We have a history and tradition from the time of founding of stripping people when they're in a jail of a firearm. That is where that convicted category comes from. To strip someone beyond that convicted category, history and tradition under the surety laws and going armed laws would require the government to bring them before a judge and establish by either a preponderance of evidence or beyond a reasonable doubt, I will say we have not gotten into that degree. But a conviction is a finding either by a court accepting a plea of guilty or by a jury that in fact someone has engaged in the conduct that was illegal. Agreed. And in some cases, you know, going to Williams Sixth Circuit, that is actual physical violence or attempted physical violence against another for the first category. They talk about the second drug dealing that has ancillary violent conduct in a vast majority or a majority of that conduct. So if the legislature decides that's presumptively or categorically a way in addition to being the way a felon is, that that reflects a danger of physical violence to others or a special danger of misuse, why is why can't that be imported into 922 G1? Because the harm of giving the legislature the ability to define anyone who could simply be disarmed, someone who jaywalks that would allow the legislature to say, oh, we'll disarm you because we think that an appropriate offense or punishment. And the other when it's tethered to a special danger of misuse or a potential for physical danger to others, which jaywalking, you know, that that maybe isn't your best example of that. But even again, what I really truly tried to do in coming up with these categories is take all the emotion out. Just look at it from a black and white standpoint. Historically, what is provable as what our founding fathers did when we disarm people? And it was while they were in jail. In this context, when they got out of jail, they were given back their arms unless they would be brought in front of a judge under the surety and going armed laws and temporarily restricted beyond that. This is a workable rule that if this court were to adopt, would resolve 95 plus percent of the cases coming before the district courts in this court. And it's all bound and grounded in the history and tradition of the United States. OK, we have a case that arguably binds us that said in this respect that says we have to consider post-conviction conduct. Are you speaking range to it's the ladies? It's the ladies wasn't a it wasn't it was precedential, but a panel decision wasn't en banc if memory serves precedent. But range two was en banc. Range two will always control over any panel decision. Range two, I think, is can be read consistent with exactly what I'm saying. What range two said is, don't we don't have to send this back to the district court. We already know what he was convicted of that he's no longer convicted of it. And the government hasn't put forth that. In essence, he was brought before a judge under the Rahimi analysis, the second category and shown to be a danger to himself or others in possession of a firearm. So since none of that is before us, I'm not sure range to really spoke to this issue of post-conviction conduct either way. Again, I would say slightly different just because this court decided not to send post Gruen and post Rahimi, not to send it back to the district court, but rather to decide it based on the record that was before it. The Williams case is a little bit different. We were in the same posture as range and this court decided to send Williams back. And we went back before the district court and the government agreed no further discovery was necessary. We already had depositions in this matter. We have a mental health evaluation that the government doesn't want to acknowledge by Dr. Gordon in this matter that shows that he doesn't pose any risk in possessing a firearm. There's not been a background check on your guy for over eight years now. But Your Honor, that's not my client's fault. This case has been pending and dragged on by the government who's in fairness. There's been a lot of there's been a lot going on in this area of jurisprudence. But at the same time, Your Honor, when we filed the case, we filed with his background check. We filed a psyche. Val, we went back when this court remanded it to the district court. It was the government that said no further discovery was necessary. And I just want to understand the premise that you're setting forth based on Rahimi is that because he's no longer under sentence. He just wins or that it needs to be determined by the district court. No, he wins because he is no longer under any type of convicted status where he's under your framework. If he were to continue to be disarmed, the government would have to proactively file in some court, whatever court that might be to continue to disarm him. That is correct, Your Honor. And I believe that's consistent with Your Honor's footnote in range to saying might be. But my footnote footnote might not be consistent with Pizzolittis. So Pizzolittis does not say that the government has an affirmative duty to is in a very similar posture to here. So whether or not your principle is better. Isn't it foreclosed by Pizzolittis? I don't believe so. The court did send it back for a determination of whether there is any dangerous aspect to Pizzolittis here. We already have that. There has been no analysis that by the government or evidence supported of record showing that Mr. Williams is currently. No, you should prevail, not because the government didn't engage in whatever framework you have set forth, but simply because there's no evidence that he continues to be a danger. I believe it's both, Your Honor. I believe both under the analysis I've put forth. We went also, even if this court were to say that there the court is to itself engage in an analysis relative to whether the individual is dangerous. How would we even do that? Your Honor, I'm not quite sure. Again, we do have, we took it on ourselves to go out and get a psychological evaluation. We submitted that of record. I think that supports us because that's the only evidence of record. The government could have contested it. They could have gotten their own psychologist to do an evaluation and attempt to say, no, he is still a danger. And we could have battle with the experts. Why isn't his knowing engagement in criminal conduct? I don't. Something that. Your Honor, respectfully, I don't think that's fair at all because that's not what the record actually yields. What happened and. Does it not show that he continued to engage in firearms instruction, including showing people how to use them, which under Benjamin. That is absolutely. Boxer are. That it absolutely 922 G1 that he himself owned them. I mean, whether or not ultimately we say he's no longer a danger or he was right at the time, he knew it was against the law. No, Your Honor. That's not what the actual record in this matter shows what the record in this matter shows. And we address this in our briefing is that Mr. Williams did not know. In fact, I pulled his criminal docket that is relative to this matter here today, and it still shows today. Well, it was as of Thursday that he was convicted of a misdemeanor of the second degree, not a misdemeanor of first degree. Which means he would not be proved. Yes, the DUI, which would not be prohibited. What is in our supplemental record is evidence of record before the district court. His boss contacted ATF and inquired as a result of this conviction, is he prohibited? He testified no. That's what ATF told him. What he was told was he's not prohibited. In fact, in our supplemental record, we have the letter from I believe it was Attorney Guy. Forgive me if the name's wrong, but he was represented in 2015 in relation to this issue where Attorney Guy was advising him that no, you're not a prohibited person and was actually challenging the Pennsylvania State Police in that regard. Let's go back to G1 for a minute. It sounds to me like you're saying, and you can correct me if I'm wrong, if I'm misstating your position, that you acknowledge that the surety and the going armed laws are relevant, that they're valid historical analogs, right? But the how, right? The way that they worked is different than the way the government wants to use them here under G1 because they've required sometimes a complaint by someone and a finding by a and none of that's happened to Mr. Williams. That's absolutely accurate and that is exactly what the Supreme Court has dictated in Rahimi. So they're valid analogs in theory, but because of the how they worked, they're invalid as applied to Mr. Williams. Is that your position? Yes, because it's also a separate, distinct, in my opinion, analysis relative simply to those who were convicted of a crime. This is the G8 versus sliding into G1? Correct. It's a non-equivalent analysis that I think there are those three different categories of analyses that are instructive and direct the outcome depending on which the individual falls into, understanding that an individual could fall into multiple of those. Someone, for example, could come out of jail or be about to be released from jail, be psychologically evaluated, and they determine this person is psychologically unfit. It needs to be involuntarily committed. That would then afford hopefully due process, maybe not under all provisions of Pennsylvania's Mental Health and Procedures Act, but that's a different issue. But that due process, a hearing, and then a finding, and the person is for a period of temporarily committed where, again, during that time, historically, traditionally, they would be disarmed. I don't dispute any of that, and I think that this analysis gives the court a framework to dispose of so many of these cases. Sure, there'll be some issues. How long can someone temporarily be disarmed? Those are issues, I believe, for a different day. But even, Judge Chung, as you had acknowledged in the footnote, your belief was that the maximal amount of time someone could be disarmed was the period of time that they could have been punished by. I remember my footnote. And that it was automatic. I remember. The restoration of rights was automatic, and that's consistent. You'd be making the same argument if Williams were a carjacker or a murderer, right, or an armed robber, would you? Yes, and that is the amount. If the court's going to impose a sentence of life, well, then, obviously, the person's going to be barred for life. And I think that's all consistent with our history and tradition, but it would go back to a determination by the trial court as to what the appropriate sentencing is for that person, including probation, parole, or ARDB. Can I ask you, can we turn to 925C for a minute? Absolutely. Okay, well, this session exists, and I get what you're talking about. Well, how do we deal with this? This gives an option. We had an offer from the government, but we haven't heard from you yet, exactly. I mean, is that offer rejected? Your Honor, we addressed this issue to a degree in our supplemental briefing. There are a whole host of issues with it, and I don't know if the court has had time to go through the 48-page notice of rulemaking proposed that I don't believe has yet been published in the Federal Register. The issues are megalithic. There's going to be constitutional challenges. Do you accept their offer or not? My client says not, because, again, he may be waiving his constitutional rights to do that. One of the issues I raised in our supplemental brief is to undergo the 925C analysis, the applicant has to admit that they are prohibited under the laws. My client's contention, and mine, is that he is not. It would be unconstitutional to strip him of his right, and that the law is unconstitutional if that—it's void ab initio. He was never a prohibited person after being released from jail. He actually served home arrest in this situation. But after that, and any probation, parole, you know, tail that went on that, it was automatic, as Judge Chung had said, in range, and I range, too. That is what I believe to be one of the biggest issues, because if my client were to apply, and let's say my client were denied, and we agree that, statutorily, he has a right to de novo appeal to the district court. And now he wants to say, 922G1 is unconstitutional as applied to me. Does the court even have jurisdiction to hear that? Because this was relief from a prohibition. He's now contending he never had a prohibition. If he never had a prohibition, how is there a basis to appeal, if the courts agree, the denial of relief where you have to say you were prohibited? This section is not new. I don't think I've seen a case where that's been dealt with. I agree. And the problem is, now the NPRM, you basically have to win Super Bowl to get relief. And then if you are so lucky to win the Super Bowl, it can also be revoked, not just by this attorney general, but by any other attorney general into the future. That is the proposal. Now, what the final rule will be- That's basically saying that it's still a de facto ban. Why doesn't he have to go through the process and say, look, there's no way I'm dangerous under this process. And this is a continued de facto ban. I mean, your initial briefing specifically made the argument that there's no dispute that it prohibits in perpetuity an individual from possessing, purchasing, blah, blah, blah. But if 925C is operable, that's not the case. And so maybe there would be an as-applied challenge, to your colleague's point, that to the extent you're arguing 925C is still not enough. But it seems it's a little premature to make that argument. Well, again, this case has been pending since 2018, long before now they're seemingly going to move forward. Again, there is no final rule. And the issue is the attorney general herself acknowledged that her withdrawal of delegation to ATF was just the first step, that there needs to be this. There's going to be all sorts of- Does there have to be a final rule if they specifically said, look, you don't have to wait for a final rule. We'll take it up. We've already given 10 people their- Well, and that's going to cause all sorts of equal protection questions and that eventually the courts may have to deal with. But I do believe, because again, your honor, my client would have to be in agreement that 922G1 prohibits him. Our position is it doesn't. In this situation, it didn't. After he was no longer incarcerated and had been released from probation parole, he no longer, as your honor had put in the footnote, it was automatic. It extinguished automatically. So how does someone then apply for relief? And there are a whole host of issues. If you look at the notice of proposed rulemaking, there's all these presumptions of someone being denied. This is not the 925C that existed before where everyone and anyone could petition. In fact, the notice of proposed rulemaking acknowledges that. It says we granted relief to people who committed murder and rape and sexual assaults and this and that. This is not the carte blanche relief that the Congress enacted. And so that- Outside of your argument that it would require him to make an admission, do you have any other argument as to why 925C doesn't alter the landscape? Well, it also, I don't believe, is obligatory. There is nothing saying that where someone is raising a constitutional challenge to whether they are prohibited, that they must go through the process. Now, if someone acknowledges, hey, yeah, I'm prohibited, I'd say under one of the three I've put forth and they want relief from that, then the process would be go through 925C. You have a mechanism for that now. Is the Attorney General in a good position, I mean, to weigh policy considerations and other things to do an individualized review? I don't know how they're doing the review. I mean, even in the 28J letter that was submitted, apparently there's going to be different rules for some than others. They even stated in their filing on Friday that if Mr. Williams were to apply the $20 proposed fee, he wouldn't have to pay, but anyone moving forward would. That Mr. Williams would not be analyzed under the proposed regulations and final rule, but anyone after it would. Like I said, there are so many questions, issues, concerns about this, also the timing of it, that miraculously the day before, oral argument in this case, all of a sudden now the NPRM is released, even though, again, I don't know that it was filed yet in the Federal Register. And we know there's going to be 90 days for comment. What the final rule will look like after those comments, anyone's guess. I mean, but from your argument, it sounds like no one can use 925C. No, that isn't the case. Anyone who is not raising a constitute, who acknowledges constitutionally I am prohibited, would have to use 925C. And this is, again, grounded in the history and tradition of what our founding fathers acknowledged to be the periods of time or situations where someone could be disarmed. And whether we like it or not, that isn't the analysis this U.S. Supreme Court has given us. We are supposed to look at the how and why of the tradition around the time of founding to determine what our founding fathers believed to be constitutionally sound. And if we don't like that, we all have the ability to change the Second Amendment. We can petition and amend the Second Amendment if we don't like what it provides. But it's not for the legislature, respectfully, it's not for the judiciary, to change our constitutional rights through the lens of interpretation or because we believe it should be different. Who are we, the single people, to be making these decisions? It's for we, the people of the United States, if it no longer fits our purposes, to change it. That's where it rests. Yeah, if we don't take up your three categories offer, and if we're dealing with a principle of dangerous or physical violence, then how do you, how does Mr. Williams, with his 20-year-old DUI, fit into that framework? Once again, I believe the district court got it right. That the government hasn't shown any rule or law that would basically support disarming him in perpetuity at this point in time. There is no dispute, driving DUI, dangerous activity. I don't think anyone disputes that. And in fact, even the district court acknowledged that, but said, just because someone engages in a dangerous activity doesn't mean it's obviously violent. And the court, in fact, acknowledged the U.S. Supreme Court precedent in Leopold that driving under the influence is not a violent offense. And what do we do about the 20 years that have occurred since his misdemeanor conviction? I believe that support, the fact that he hasn't had any other- I mean, are we allowed to look at it, post-conviction conduct? So the Sixth Circuit Williams case said we look at his conviction, his predicate conviction, and his entire criminal record. We could look at that, and then we could also look at other post-conviction conduct. Like, does his neighbor complain about him? Like, I don't- I don't believe that is grounded in the history and tradition of our family. To the extent there is still going to be some that want to argue that, there are a whole host of issues beyond that which you've even identified, Judge Porter, that will have to be considered. For example, Mr. Williams' DUI is 20 years old. What happens if he petitioned when it was 5 years old? Is the government now going to say, oh, well, you know, this individual had been granted relief after 20 years, we want you to wait 15 more years? You know, how are the courts going to decide those types of situations? Whereas the rule I'm putting forth, it's an easy-peasy analysis. That resolves so many of these cases, and like I said, is grounded in the history and tradition. Okay, thank you, Ken. Thank you, Your Honors. We hope the court will affirm the decision. Thank you. I'd like to make a couple points about precedent, and then also talk about Section 925C. So on precedent, I think the arguments that you've heard today from Mr. Williams' counsel are not reconcilable with this court's en banc decision in Range, and with the subsequent decisions in Pizzolitti's and Harris. I think that it's quite important to recognize that there is not sort of a free-for-all where anyone, as soon as they're out of, done serving their sentence for an offense that is, that quite seriously indicates danger with firearms, that that person gets some sort of automatic restoration of their firearm rights back. With respect to the footnote in Judge Roth's concurrence that describes your view, Judge Chung, of course, that was a concurrence, with all due respect, and I believe that it specifically— I already said it might not be consistent with Pizzolitti's. And I believe there was a clause in that footnote that said that this was your view as to offenses that fall in the third category described by the Sixth Circuit's Williams case, which are crimes that are neither crimes against the person nor associated with dangerousness in the way that drug dealing would be. I think here we are much closer to that second category. Crimes like drug dealing, crimes like the bookmaking offenses at issue in Pizzolitti's have this historical association with dangerousness that is quite similar to what a DUI, especially a recidivist DUI, at almost three times the legal limit has. And so I think it's quite clear under this court's precedence that you need to go through a factual analysis of the person as a whole. And to Chief Judge Yaris, to your question about the department's views about the direction that this court's precedent has taken, I think I would encourage the court to look at what this—what the department has been saying to the Supreme Court in cases that have asked the Supreme Court to weigh in on Section 922G1's constitutionality. And what the department has pointed out is that there are many circuits in which none of these facts would be relevant to the constitutionality because there are now six circuits in which, as applied, individualized challenges are unavailable. And to the extent there is some disagreement about the as-applied constitutionality in unusual cases, that is a disagreement that Section 925C addresses because it provides a sort of individualized inquiry that Pizzolitti's makes clear is what's governing under this court's law and that the Sixth Circuit in Williams made clear was governing under that court's law. And so if the court is interested in sort of staying in step with something that would sort of minimize the impact of that circuit split that exists, I think going with the recognition that 925C addresses these problems would be a good way to do that. Can I ask you, your adversary is of the position that in order to avail himself of the 925C process, he must concede that he is unable to possess a firearm. I think that's what his argument is. Is that your position as well? I think that in order to avail himself of the process, he would have to concede the same thing that he had to concede in bringing a complaint challenging the as-applied constitutionality of the statute, which is that he concedes that the statute applies to him as written. And the reason why he asserts that he has standing to challenge it on a reinforcement basis is that he says, this statute applies to me because I was subject to a conviction that's punishable by up to five years imprisonment. I am worried that there is no mechanism for me to get relief from that. Well, now there is a mechanism for him to get relief from that. So I frankly just remain, it remains quite unclear to me what the basis is for saying that there's any concession. I think the department has repeatedly made clear that not only is this process not the sort of winning the lottery process that the Plaintiff's Council has represented. I really think there's no reason in the record of the decisions that have been made to come out with an interim final rule that restores this authority within months of the start of a new administration and then to get a notice of proposed rulemaking out on this timeline. There is just nothing to suggest that this is anything but a very real opportunity to avail someone of the very type of process that this court has said is required. Well, now, so if it's marginal, I mean, we're not all lawyers and frankly, this is a developing area. It's a little bit troubling what you're saying. I mean, what if you're saying, I don't think I'm subject to not being able to possess a firearm, but if I go to the department and ask for my guns back just to be sure, then I put myself in hot water for no reason. I guess I still don't really see how that works. Certainly not here where the Plaintiff came to court saying I'm invoking the federal court's jurisdiction on the basis that this statute applies to me. For declaratory relief that I can possess a firearm. If there were a basis for declaratory relief that the statute doesn't apply, then we might be in a different situation. I just think that's far removed both from where we are and from anything that suggests that this process would somehow cause you to forfeit any right. I think if you were uncertain about your ability to pass a background check, there are mechanisms you can go through and I believe the Plaintiff went through those mechanisms and that's how he found out that this is something that he needs to challenge the constitutionality of as of the time he brought this complaint because there wasn't a safety valve that there now is in Section 925C. Could he apply for 925 relief without waiving his constitutional argument as to 922G1? Yes. He could? Yes. I think he could certainly say one of the reasons why I am applying is that I believe that this infringes my constitutional right if you don't grant relief. The notice of proposed rulemaking makes clear that the Attorney General will consider in her view whether a failure to grant relief would violate the Second Amendment and I think when the case then ends up in a federal district court which has jurisdiction to review the Section 925C determination, I think it would certainly make sense for that court to ask would the failure to grant relief violate the Second Amendment and if the Attorney General had nonetheless denied relief to someone for whom the answer to that question is yes, I think you would be asking isn't that an abuse of discretion of the Attorney General's authority? Would he be asking not only if it's an abuse of discretion but also reviving his original constitutional argument, his Second Amendment argument? I don't see anything in the statute that would say that when you are petitioning under this rule... If he loses... You can't say you should either resolve my statutory claim in light of the constitutional nature of the right to bear arms or you should add on maybe as a follow-on case or even joined with it. I'm not sure of the exact mechanics. The point is that you are not giving up your right to say there is a constitutional issue. You are just giving the courts an opportunity to resolve this case on a statutory ground and you're giving the department an opportunity to resolve the case before it ever gets to court on a statutory ground that is informed by the Constitution. Sorry if I missed it in the notice of proposed rulemaking, but if someone applies and loses before the Attorney General, what's the mechanism for... What do you do then? Go to district court? Yes. The statute itself actually says any person whose application for relief from disabilities is denied by the Attorney General may file a petition with the United States District Court for the district in which he resides for judicial review of such denial. Okay. And then that's where you would raise your constitutional argument in addition to an abuse of discretion argument. Certainly, that's where someone could raise it. I think we don't expect that there will be a situation where there is a delta between are you entitled to relief under Section 925C and is there an as-applied constitutional problem with the statute? But that is, again, something that I think could be confronted in future cases. All right. Thank you, counsel. We thank counsel for their excellent briefing and supplemental briefing and argument today. And we will take the case under advisement. And if counsel are amenable, we'd like to greet you at sidebar and thank you for your great work. And I'll ask the clerk to adjourn for the day.